# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 1, 2005 Session

## STATE OF TENNESSEE v. ANTHONY ALLEN

**Direct Appeal from the Criminal Court for Shelby County
No. 00-10541-56     John P. Colton, Jr., Judge**

---

**No. W2004-01085-CCA-R3-CD  - Filed July 8, 2005**

---

The defendant, Anthony Allen, was convicted by a Shelby County jury and received an effective sentence of 124 years for numerous aggravated rape and aggravated robbery charges consolidated into a single trial.  In this appeal, he argues: (1) the trial court erred in consolidating the indictments; (2) the trial court erred by ordering consecutive sentences; (3) the trial court erred in denying his motion to suppress a post-arrest statement; (4) the evidence is insufficient to support three of his convictions; and (5) the State failed to elect the offense for which conviction was sought in two case numbers.  Following a thorough review of the record and applicable law, we reverse one of the defendant's aggravated rape convictions and remand it for a new trial, affirm the remaining judgments of conviction, and remand the case for a new sentencing hearing to determine whether consecutive sentencing is appropriate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded**

J.C. McLin, J., delivered the opinion of the court, in which Thomas T. Woodall and James Curwood Witt, Jr.,JJ., joined.

William D. Massey (on appeal), Memphis, Tennessee and Brett Stein and Steve Halmon (at trial), Memphis, Tennessee, for the appellant, Anthony Allen.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Thomas Hoover and Steve Crossno, Assistant District Attorney Generals, for the appellee, State of Tennessee.

## OPINION

### I.  Facts and Procedural History

Following a hearing on the State's motion, the trial court consolidated for one jury trial fifteen indictments alleging the defendant's participation in the aggravated rape and aggravated

robbery of eight victims in four separate incidents. The following is an account of the events that transpired.[1]

## December 14, 1999

In the first incident, the defendant and his co-defendant, Marico Finnie,[2] entered Brandy's in Memphis. Brandy's is an establishment frequented by men requesting lady employees to model lingerie in private rooms. Four women were present at the time the defendant and Finnie entered, including A.C.[3] and R.B.[4] After briefly discussing pricing with the ladies, the defendant pulled a gun from his pants and held it to A.C.'s hand while Finnie proceeded to kick in doors and search for any other women that may have been hiding. After demanding money and rummaging through the women's bags and purses, the defendant and Finnie forced the women into one room and directed them to sing Christmas carols. The defendant held a gun on them while Finnie raped R.B. in an adjoining room. The defendant then raped A.C. at gunpoint while Finnie searched her pockets. Before the men left, Finnie "preach[ed]" to the women concerning their lifestyles.

Subsequent to the events, A.C. and R.B. were taken to the Memphis Sexual Assault Resource Center (MSARC). A.C. complained of abdominal pain and tenderness, but showed no genital trauma during her examination. R.B.'s exam also revealed a lack of genital trauma but indicated that her left jaw was reddened.

At trial, the defendant admitted that he and Finnie had been drinking when they decided to go to Brandy's on December 14, 1999. However, the defendant denied raping A.C. He testified that, upon entering Brandy's, Finnie disappeared. The defendant stated that, when he found Finnie, "[a] girl was on the bed and [Finnie] had his pants down and he was punching her on her left side of her face." The defendant stated that Finnie then threw his gun to him, which the defendant admitted to holding by his leg. The defendant stated that, before he and Finnie left, Finnie made the women sing Christmas songs, went around kicking in doors, and "preach[ed]" to the girls, telling them "[y]'all are whores, y'all are no good." The defendant admitted that he threw the women's stolen bags into the truck as he and Finnie left.

---

[1] One of the four incidents of which the defendant was charged occurred on December 27, 1999. A factual account of this occurrence is subtracted from this opinion because the defendant was acquitted on the charge arising from the incident.

[2] The trial court granted a motion to sever the codefendant's trial. In accordance with the policy of this Court, the codefendant's name will appear as spelled on the indictments: Marico Finnie. He is referred to as "Rico" in various places throughout the record. However, for continuity, he will be referred to as "Finnie" throughout this opinion.

[3] This Court has chosen to protect the identity of victims of sexual offenses, and ,thus, will refer to the victims in this case by their respective initials.

[4] The additional two women present presumably were absent from trial and their proper names are not evident in the record. However, A.C. and R.B.'s testimonies reference one of the girls as "Passion" or "Anna Marie" and the other as "Neesha."

In the second incident, the defendant and Finnie entered Southern Belles with guns drawn. The five women present at the time included H.W., F.C., and M.B.[5] The men forced the women to disrobe and kneel on the floor with their heads face down into a couch. After robbing the women, the defendant and Finnie began to fondle them. One of the men stuck his fingers into the vagina of M.B. as she was kneeling over the couch. F.C. was ordered to lie on the floor with her legs spread open and raped. H.W. was ordered to "suck on [the defendant's] penis" while the defendant pointed his gun at her head. After forcing oral sex, the defendant vaginally raped H.W. with the gun pointed at her chest. The women were then tied up and robbed of their money, jewelry, and personal possessions. The women were also directed to sing Christmas carols. Before the defendant and Finnie left, they "preached" to the women and threatened to kill them if they reported the incident to police.

The victims in this incident were also treated at MSARC. The examinations indicated that F.C. had red marks on her wrists, M.B. had swelling and redness on her right forearm, and that H.W. had reddened buttocks. However, no trauma was present in any of the women's genital or anal areas. From the examination of F.C., Chad B. Johnson of the Tennessee Bureau of Investigation was later able to positively match the DNA profile of the semen found to the defendant's DNA profile.

Laverne Jones of the Memphis Police Department was called to Southern Belles following the incident. Although she was unsuccessful in collecting fingerprints, Jones did submit several items for chemical evaluation. Among these items were two belts used to tie the girls up, a bottle of cocoa butter, and some condom packages.

Frances Carpenter, a chemical processor with the Memphis Police Department, discovered one "print of value" among the items brought back for chemical evaluation. Carpenter then sent the print to Nathan Gathright, a latent fingerprint examiner with the Memphis Police Department, who matched the print to the defendant.

At trial, the defendant admitted that he and Finnie were at Southern Belles on December 20, 1999. The defendant testified that Finnie again disappeared as they entered the establishment. He stated that, Finnie later came in and went down the hall with a girl, stating, "Hold [my gun] for me, I'll be right back." The defendant testified that, as he awaited Finnie, he paid F.C. $20 for a massage, which turned into oral sex. The defendant testified that he then gave F.C. $80 more for sex. The defendant testified that, as he was having sex with F.C., a girl ran into the room covered in blood. He stated that Finnie then ordered the girls to sing Jingle Bells as they were tied up and their clothes were soaked in a shower. The defendant testified that Finnie also dumped out their bags

---

[5] The additional two women present presumably were absent from trial and their names are not evident in the record. However, the testimony of H.W. references one of the women as "Rochelle."

and confiscated their driver's licenses. The defendant admitted to tying up one of the girls, but denied that he raped or robbed anyone.

## January 14, 2000

In the final incident, the defendant and Finnie entered Flamingo Club in Memphis. While at the club, the men requested a dancer, R.L., and her friend, C.G.,[6] to accompany them for a private party. Once the women entered the defendant's car, the defendant and Finnie drew guns. The defendant then drove to a nearby hotel room, where he and Finnie ordered the women to disrobe, rifled through their belongings, and collected their money. The defendant then ordered R.L. to perform oral sex, under the instruction that, if she bit him or "sucked it too hard," he would shoot her. When the defendant was satisfied with the oral sex, he began to have vaginal sex with R.L., keeping the gun pointed at her head. The defendant and Finnie then ran a tub full of water and submerged the women's belongings.

At trial, the defendant denied that he raped R.L. Rather, he testified that he gave R.L. $125 and made an agreement with both women to accompany him and Finnie to the hotel room for sex. The defendant testified that, as Finnie was having sex with C.G. on the bed, R.L. began to voluntarily give him oral sex. The defendant stated that Finnie soon became upset and began cussing and arguing with C.G. The defendant testified that Finnie then dumped out the women's purses and took their driver's licenses.

## Arrest

On January 15, 2000, after being released from the hospital, R.L. pulled into a gas station in North Memphis while on the way to visit her brother. At the gas station, she spotted the defendant and subsequently alerted the police. Thereafter, the police arrested the defendant.

After his arrest, the defendant gave a statement, admitting his involvement in the incidents, but denying guilt as to all charges.[7] The defendant was also independently identified by numerous victims in a photographic lineup. During the course of these events, Finnie was implicated as a suspect, and the police proceeded to obtain consent to search his residence and vehicle. The police found a handgun and various items belonging to the victims in this case, including two driver's licenses, a cellular phone, and a pager.

The defendant then made a pre-trial motion to suppress his post-arrest statement. However, the trial court concluded, "[T]he defendant gave the statement freely, voluntarily and without coercion and the motion to suppress the statement is denied."

---

[6] The transcript of the record lists the witness/victim's initials as C.G. When asked her name at trial, the witness/victim included her married name (C.G.B.). This opinion will refer to the witness/victim as C.G.

[7] The statement was read into evidence by Sergeant Maxine Craig at trial and is consistent with his testimony that he was present during the incidents, but innocent of the rapes and robberies.

**Conviction and Sentencing**

At the conclusion of the evidence, the jury found the defendant guilty of eight counts of aggravated rape, one count of the lesser-included offense of facilitation of aggravated rape,[8] and seven counts of aggravated robbery.[9] At the sentencing hearing, the defendant's mother and father testified as to his character. The defendant also made a statement in which he emphatically denied the charges. The trial court reviewed the testimony and the evidence but found no applicable mitigating factors. Although the trial court concluded that several enhancement factors applied, the trial court declined to enhance the sentences above their statutory presumptive lengths.[10] The defendant received a total effective sentence of 124 years. He was sentenced to twenty years at 100% for five aggravated rape convictions, one for each victim, all of which were ordered to be served consecutively to three consecutive eight-year at 30% aggravated robbery sentences. All remaining sentences were either ordered to run concurrently or the conviction was merged.

In justifying consecutive sentencing, the trial court stated:
> As to the consecutive sentencing, the court finds that this - - taking all these into consideration, that this defendant is a dangerous offender. Court finds that there should be some consecutive sentencing in these cases.
> . . . .
> Court finds that the defendant is in a consecutive situation here due to the fact of the totality of the crimes involved here. The - - appears from what this court heard, reviewing the court's notes, testimony of the victims in this case, that the defendant had no hesitancy here at all in his involvement.
> The court further finds that the - - the criminal behavior and criminal acts would clearly justify putting this person into consecutive sentencing; although, I did - - I did run some - - the robberies concurrently.

After the defendant's motion for new trial was denied, the defendant filed notice of this appeal.

## II. Analysis

---

[8] The record reveals that this count was merged into a separate count of aggravated rape.

[9] We have prepared an Appendix to this opinion to clarify and designate the specific sentences and convictions in relation to each victim.

[10] Aggravated rape is a class A felony, which, for a standard offender, carries a sentencing range of not less than fifteen nor more than twenty-five years. Tenn. Code Ann. § 39-13-502; Id. § 40-35-112. The presumptive sentence for a class A felony shall be the midpoint of the range (twenty years in this case) if there are no enhancement or mitigating factors. Id. § 40-35-210(c).

    Aggravated robbery is a class B felony, which, for a standard offender, carries a sentencing range of not less than eight nor more than twelve years. Id. § 39-13-402; Id. § 40-35-112. The presumptive sentence for a class B felony shall be the minimum sentence in the range (eight years in this case) if there are no enhancement or mitigating factors. Id. § 40-35-210(c).

## Consolidation

The defendant argues that the trial court erred in consolidating the four rape cases, arguing that the offenses were not part of a common scheme or plan and that the evidence of each offense would not have been admissible in the trial of the other offenses. The State contends that the trial court properly consolidated the cases.

Pretrial, the State moved to consolidate the cases pursuant to Rules 8 and 13 of the Tennessee Rules of Criminal Procedure. Rule 8(b) provides that two or more offenses may be "consolidated pursuant to Rule 13 if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." Rule 13 allows the trial court an option to consolidate the offenses if the offenses could have been joined in a single indictment pursuant to Rule 8 or sever the offenses if the prosecution or defense could have obtained a severance under Rule 14.

The defendant opposed the motion pursuant to Rule 14(b)(1), which provides that "the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Under this provision of Rule 14, a defendant has an absolute right to have the offenses separately tried unless the offenses are part of a common scheme or plan *and* evidence of each offense would be admissible in the trial of the others. Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000).

The first prong of Rule 14(b)(1), common scheme or plan, requires a showing that (1) the offenses are of distinctive design or signature crimes; (2) the evidence demonstrates a larger continuing plan or conspiracy; or (3) the offenses are part of the same criminal transaction. State v. Moore, 6 S.W.3d 235, 240 (Tenn. 1999). The second prong of Rule 14(b)(1) requires a showing that the evidence of one offense would be admissible in the trial of the others. Under Rule 14(b)(1), the question of evidentiary admissibility *must* be addressed. Spicer, 12 S.W.3d at 445. The trial court must conclude that (1) evidence of each offense is relevant to some material issue in the trial of the other offenses under Tennessee Rule of Evidence 404(b)(2); and (2) the probative value of the evidence of other offenses is not outweighed by the prejudicial consequences of admission under Tennessee Rule of Evidence 404(b)(4). Id.

Generally, if the trial court complied with the Rules of Criminal Procedure, its decision to consolidate offenses will not be overturned absent an abuse of discretion. State v. Toliver, 117 S.W.3d 216, 231 (Tenn. 2003); Spicer, 12 S.W.3d at 442. However, in this case, the record is absent a showing that the trial court complied with the second prong of Rule 14, and the State concedes that "the trial court did not set out findings under Rule 404." Being that our supreme court has explicitly held that "the 'primary issue' to be considered in any severance case is whether evidence of one offense would be admissible in the trial of the other if the two offenses remained severed" and that the issue "must" be addressed, we cannot but conclude that the trial court erred in failing to conduct a Rule 404 analysis. See Spicer, 12 S.W.3d at 445.

We further conclude that the trial court abused its discretion by failing to sever the offenses pursuant to Rule 14. Reviewing the issue *de novo*, we determine that the distinctive characteristics and common factual setting which engulf each of these crimes has a questionable relation to the first prong of Rule 14(b)(1), common scheme or plan. However, propensity toward general sexual gratification is clearly not a common scheme or plan. Establishing the second prong of Rule 14 and showing that evidence of each offense is relevant to a material issue in the trial of the other offenses and is not unduly prejudicial is an even tougher showing. Generally, evidence of other offenses that tends to show a defendant's character or propensity is generally not admissible, as it invites the fact-finder to infer guilt from propensity. Tenn. R. Evid. 404(b). However, such evidence may be admissible for other purposes such as to prove motive, intent, identity, the absence of mistake or accident, or the existence of a larger continuing plan. Denton, 149 S.W.3d at 13. In this case, either a victim has identified the defendant or he has admitted to being present in each criminal episode, thus, identity is not in issue. This Court fails to see any other material issue that would offer another purpose for admitting the evidence of one crime in the trial of every other pursuant to Rule 404. Accordingly, we determine that the trial court erred in denying the defendant's motion to sever.

Having found that the trial court erred in refusing to sever the offenses for trial, this Court must evaluate the record to determine if this error appears to have affirmatively affected the outcome of the trial. Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b); see also State v. Denton, 149 S.W.3d 1, 15 (Tenn. 2004). Severance is primarily an evidentiary question, therefore, "the effect of a denial of that right is weighed by the same standard as other non-constitutional evidentiary errors: the defendant must show that the error probably affected the judgment before reversal is appropriate." Moore, 6 S.W.3d at 242. "[T]he line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict, beyond a reasonable doubt." Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979); see also Spicer, 12 S.W.3d at 447-48.

The State argues that the failure to sever the offenses was harmless as the evidence presented against the defendant was overwhelming. The defendant compares the proof to that in Denton, which was insufficient to establish harmless error. He quotes, "We can never know how evidence that should not have been admitted truly affected the minds of the jury members." Denton, 149 S.W.3d at 16. We conclude that the overwhelming evidence in this case is distinguishable from that in Denton. Afforded separate trials, the evidence was such that the defendant would have been severally convicted.

The evidence presented against the defendant at trial consisted of the testimony of multiple victims, several of whom identified the defendant in independent photographic lineups. At trial, each victim testified clearly about the defendant's actions and unequivocally identified the defendant as her assailant. Furthermore, the defendant voluntarily made a written confession of his involvement in all four incidents. Although he denied specifically raping the women, parts of his testimony and confession reflect that he tied up at least one victim, held a firearm at differing times, and robbed the victims in one episode. These admissions, joined with the corroborating testimonies of the victims and the evidence found in the co-defendant's vehicle and home, provided ample,

indeed overwhelming, proof for the jury to convict the defendant. Based upon this degree of proof, separate trials of these offenses would not have altered the verdicts.

This Court has carefully considered whether the defendant was unduly prejudiced by the joinder of these offenses despite the degree of proof adduced at trial. In the present case, the defendant alleged consensual sex as a defense in at least one of the cases. As such, this Court has meticulously reviewed the record and applicable authority to determine the probability that the jury was overwhelmed by the sheer volume of prejudicial evidence and was tempted to convict upon the defendant's mere propensity. In Spicer, our supreme court stated, "There may be some cases in which a jury is able to give separate attention and consideration to the evidence presented under each indictment such that an error in consolidation will not affirmatively affect the outcome of the trial." 12 S.W.3d at 448. We review this case to present such occasion. The defendant's argument that "[w]e can never know how evidence . . . affected the minds of the jury members" is inconsistent with the record. The jury in this case was able to distinguish between the incidents in question and arrive at separate verdicts. This ability is evidenced by the defendant's acquittal of the charges stemming from December 27, 1999. In fact, the jury was able to evaluate the evidence and find the defendant guilty of a lesser-included offense on one count and find the defendant not guilty in a total of six counts. Such disparity in the verdicts demonstrates that the jury considered each offense separately. For these reasons, together with the degree of proof presented, we conclude that the error in consolidating the offenses was harmless.

**Consecutive Sentencing**

In his next argument, the defendant asserts that the trial court erred in ordering consecutive sentencing. Specifically, the defense argues that Blakely v. Washington, 542 U.S. - - - -, 124 S. Ct. 2531 (2004) reaches consecutive sentencing determinations and that the trial court failed to specifically recite its reasons for ordering consecutive sentencing.

Initially, we note that this Court has previously held that "Blakely and Apprendi[v. New Jersey, 530 U.S. 466 (2000)] dealt with the range of punishment imposed for a *single* offense, not whether consecutive sentencing may be applied in cases where the defendant has been duly convicted of multiple offenses." State v. Earice Roberts, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *12 (Tenn. Crim. App., at Jackson, Nov. 23, 2004), perm. app. denied (Tenn. March 21, 2005). Recently, the Tennessee Supreme Court in State v. Gomez, - - - S.W.3d - - - -, No. M2002-01209-SC-R11-CD (Tenn. April 15, 2005), held that Tennessee's criminal sentencing laws do not violate the Sixth Amendment guarantee of a jury trial and were not affected by Blakely. Accordingly, we conclude that defendant's Blakely argument is misplaced.

In reviewing the trial court's order of consecutive sentencing, this Court employs a *de novo* standard of review with a presumption that the determinations of the trial court are correct. Tenn. Code Ann. § 40-35-401(d). "[T]he presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166,

169 (Tenn. 1991). In conducting our review, this Court considers: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any mitigating or statutory enhancement factors; (6) any statement that the defendant made in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986). The Sentencing Commission Comments to section 40-35-401 provide that the burden is on the defendant, as the appealing party, to show that the sentence is improper.

The defendant argues that the trial court failed to adequately recite the reasons that it imposed consecutive sentences. Tennessee Rule of Criminal Procedure 32(c)(1) requires that the trial court "specifically recite the reasons" for the imposition of consecutive sentencing. In this case, the trial court found, "the defendant had no hesitancy here at all in his involvement" and "this defendant is a dangerous offender." This language is similar to that in Tennessee Code Annotated 40-35-115(b)(4): "The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." However, for dangerous offenders, the imposition of consecutive sentences requires additional findings that the sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offenses committed. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). Proof that a defendant's behavior indicated no hesitation when the risk to life was high "is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences." Id. at 938.

The record in the instant cases reflects that the trial court failed to make these findings. In addition, the record contains no showing that the lengthy 124-year sentence is "no greater than that deserved for the offense committed." See State v. Imfield, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting Tenn. Code Ann. § 40-35-103(2)). Consequently, the case is remanded to the trial court for re-sentencing.

**Motion to Suppress**

The defendant's third complaint on appeal is that the trial court erred in denying the motion to suppress his post-arrest statement resulting from a warrantless arrest. Additionally, he asserts that the statement should be suppressed because of his Fourth Amendment right to a prompt judicial determination of probable cause following a warrantless arrest.

When reviewing a trial court's determinations at a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). A trial court's findings of fact will be upheld unless the evidence preponderates otherwise. Id. "The defendant bears the burden of showing that the evidence preponderates against the trial court's findings." State v. Huskey, 66 S.W.3d 905, 917 (Tenn. Crim. App. 2001). This

Court must review the trial court's application of law to the facts purely *de novo*. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).

The State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. When evaluating a trial court's ruling on a pretrial motion to suppress, we may consider "the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

The defendant initially argues that the statement should have been suppressed because his arrest was not supported by probable cause. Pursuant to both the federal and state constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). Both the Tennessee and the federal constitutions require the existence of probable cause to effectuate an arrest without a warrant. State v. Bridges, 963 S.W.2d 487, 491 (Tenn. 1997) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause in the context of a warrantless arrest "exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" Bridges, 963 S.W.2d at 491 (quoting Beck, 379 U.S. at 91); see State v. Lewis, 36 S.W.3d 88, 97 (Tenn. Crim. App. 2000) ("Probable cause is 'a reasonable grounds for suspicion, supported by circumstances indicative of an illegal act.'").

In the instant case, one of the victims spotted the defendant after her attack and informed the police. The defendant fails to make any showing that this eyewitness identification was unreliable or untrustworthy. Consequently, we conclude that the police effectuated a probable cause arrest of the defendant.

Next, the defendant asserts that his statement should have been suppressed because he was unreasonably detained absent a "prompt judicial determination of probable cause." In Gerstein v. Pugh, 420 U.S. 103, 125 (1975), the Court held that the Fourth Amendment requires a prompt judicial determination of probable cause following a warrantless arrest. However, the Court in Gerstein did not illustrate a definition of "prompt." In County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991), the Court attempted to clarify its holding in Gerstein by stating that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein."

The defendant correctly asserts that a delay will not pass constitutional muster merely because its length does not surpass the stroke of the forty-eighth hour. Delays may still be unreasonable if motivated by ill will or to obtain additional evidence justifying the arrest. Id.; State v. Huddleston, 924 S.W.2d 666, 672 (Tenn. 1996). In Huddleston, the Court recited four factors to consider: (1) the presence or absence of *Miranda* warnings; (2) the temporal proximity of the arrest

-10-

and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. 924 S.W.2d at 674-75. Because the delay in the instant case was less than forty-eight hours, the defendant bears the burden of establishing, by a preponderance of the evidence, that the delay was unreasonable in light of these factors. See McLaughlin, 500 U.S. at 57 (stating that the burden shifts to the government if no probable cause determination occurs within forty-eight hours).

In the instant case, the defendant was advised of his *Miranda* rights during approximately his thirty-fifth hour of incarceration. The defendant concedes that this factor does not weigh in his favor. In considering the temporal proximity of the arrest to the confession, we note that "if the statement was given prior to the time the detention ripened into a constitutional violation, it is not the product of the illegality and should not be suppressed." Huddleston, 924 S.W.2d at 675. Finding that the defendant's statement was given within time period prescribed in McLaughlin, we conclude that this factor does not weigh in the defendant's favor. We are also without a showing that the purpose of the detention was flagrant. The single factor which weighs in support of suppression and against attenuation is the lack of intervening circumstances which could have purged the taint of an illegal detention. There is no indication that the defendant spoke with an attorney, relative, or priest prior to giving his statement. However, we conclude that this factor, alone, does not establish that the defendant has overcome his burden to show the unreasonableness of the detention. Consequently, we conclude that the motion to suppress was properly denied by the trial court and that the defendant's assertions on this issue are without merit.

### Sufficiency of the Evidence

The defendant's next argument on appeal is that the evidence is insufficient to sustain the convictions in three case numbers, 00-10552, 00-10554, 00-10555. Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); See Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.").

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). A guilty verdict removes the presumption of innocence so that, on appeal, a convicted criminal defendant who challenges the sufficiency of the evidence bears the burden of demonstrating why the evidence is insufficient to support the verdict. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); Carruthers, 35 S.W.3d at 557-58; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We will not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See Evans, 108 S.W.3d at 236-37. Questions about the credibility of witnesses, the weight

and value of the evidence, as well as all factual issues raised by the evidence are to be resolved by the trier of fact. Id. at 236; State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

In the instant case, we initially address the defendant's argument that the language in some of the aggravated rape indictments, "aided and abetted one by the other," does not precisely track the language defining aggravated rape as stated in Tennessee Code Annotated section 39-13-502(a) and, therefore, renders these indictments invalid. Section 39-13-502(a) defines aggravated rape as "unlawful sexual penetration of a victim by the defendant . . . [and] the defendant is aided or abetted by one (1) or more other persons; and force or coercion is used to accomplish the act . . . ." To be valid, an indictment must provide sufficient information "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). This Court concludes that the language of these indictments sufficiently apprized the defendant of the charge against him. Therefore, this issue has no merit.

The remainder of the defendant's argument in regards to his sufficiency challenge rests upon the fact that neither M.B. (00-10552) nor F.C. (00-10554) could identify which man sexually assaulted her and that R.B. (00-10555) identified Finnie as her attacker. However, the jury was instructed that a defendant may be found criminally responsible for the conduct of another. Tennessee Code Annotated section 39-11-402(2) provides that a person is criminally responsible if he "[acted] with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [or] . . . solicits, directs, aids, or attempts to aid another person to commit the offense." "Presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred." State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998).

The defense makes the novel argument as to case number 00-10552 that M.B.'s testimony, "one of them st[uck] their fingers up in me," calls for speculation as to whether M.B.'s vagina or anus was actually penetrated. Failure to recite the precise word, vagina or anus, does not foreclose the ability of the jury to view the testimony and arrive at a conclusion. By their verdict, the jury found that the defendant either penetrated or was criminally responsible for the unlawful penetration of M.B. in violation of Tennessee Code Annotated section 39-13-502. We conclude that M.B.'s testimony was sufficient to support this finding. Moreover, "sexual penetration," as stated in section 39-13-502 and defined in section 39-13-501(7) (emphasis added), includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or *any other intrusion, however slight, of any part of a person's body . . . .*"

In the second case number, 00-10554, F.C. testified that she was raped by one of the men but could not identify him because she kept her eyes closed. The defendant argues that, because of F.C.'s inability to identify him as the rapist, the conviction should not stand. However, dissolving this conviction would ignore the law of criminal responsibility. F.C.'s testimony, alone, would support the verdict based upon the jury's ability to accredit a witness. In addition to this testimony, the State's DNA expert testified that the DNA profile of the semen found during F.C.'s examination

matched the defendant. In this regard, we conclude that the evidence is clearly sufficient to enable a rational trier of fact to convict the defendant of the aggravated rape of F.C.

In his final complaint under this issue, the defendant asserts that the evidence is insufficient to convict him of the aggravated rape of R.B., case number 00-01555. Under this indictment, the defendant was found guilty of facilitation of aggravated rape and of aggravated rape, and the counts were merged by the trial court. R.B. testified that Finnie raped her while the defendant held a gun on the other women. The defendant admitted that he held Finnie's gun by his leg. Furthermore, in his post-arrest statement, he stated that, as Finnie was having sex, "I am telling myself, how can I let this man do this?" This evidence is clearly sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was criminally responsible for the aggravated rape of R.B.

**Election of Offenses**

The defendant next complains that the trial court erred by failing to require the State to elect the offenses upon which it sought conviction in relation to case numbers 00-10546 and 00-10554. He argues that the evidence in each of these cases involves more than one act of sexual penetration. The State argues that an election was not required because the sexual acts constituted one single criminal offense in each case number. The State further contends that, in case number 00-10554, its closing argument did effectively serve as an election.

The Tennessee Supreme Court "has consistently held that the prosecution must elect the facts upon which it is relying to establish the charged offense if evidence is introduced at trial indicating that the defendant has committed multiple offenses against the victim." State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001). The election requirement "safeguards the defendant's state constitutional right to a unanimous jury verdict by ensuring that jurors deliberate and render a verdict based on the same evidence." Id. at 631. In addition, the election requirement enables a defendant to prepare for a specific charge, protects a defendant against double jeopardy, enables the trial court to review the weight of the evidence in its capacity as thirteenth juror, and enables the appellate court to review the legal sufficiency of the evidence. State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001).

Failure of the State to elect offenses when the proof requires an election is considered an error of constitutional magnitude and will result in reversal of the conviction, absent the error being harmless beyond a reasonable doubt. See State v. Shelton, 851 S.W.2d 134, 137-38 (Tenn. 1993). It is "the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect the particular offense . . . upon which it would rely for conviction, and to properly instruct the jury so that the verdict of every juror would be united on the one offense." Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973).

With these basic principles in mind, we turn to the facts of case numbers 00-10546 and 00-10554 and address the State's argument that an election was not required. One of the elements of aggravated rape is "unlawful sexual penetration of a victim by the defendant . . . ." Tenn. Code Ann.

-13-

§ 39-13-502(a). Breach of this element requires the defendant to commit unlawful "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . ." Id. § 39-13-501(7).

Initially addressing case number 00-10546, we note that the proof established that the defendant both orally and vaginally penetrated the victim, H.W. Both of these acts met the definition of "unlawful sexual penetration" for the offense of aggravated rape. However, the State did not distinguish which act of penetration it was relying upon for conviction.

Our analysis begins with our supreme court's conclusion that rape is generally not a continuous offense, as each act of intercourse constitutes a distinct and separate offense. State v. Phillips, 924 S.W.2d 662, 664 (Tenn. 1996). However, in Phillips our supreme court stated that separate acts of intercourse may be so related as to constitute one criminal offense. Id. Several factors were enumerated in Phillips to assist courts in determining whether interrelated acts of rape were, in fact, separate and distinct offenses requiring election for conviction: the nature of the acts; the area of the victim's body invaded by the sexually assaultive behavior; the time elapsed between the discrete conduct; the accused's intent; and the cumulative punishment. Id. at 665.

This Court has previously applied these factors to conclude that election was unnecessary to convict a defendant who had penetrated a victim both digitally and with his penis. State v. Adrian Arnett, No. 03C01-9811-CR-00395, 2000 WL 122222, at *7 (Tenn. Crim. App., at Knoxville, Feb. 2, 2000), aff'd 49 S.W.3d 250 (Tenn. 2001). In Arnett, the defendant "tried to put his penis inside of [the victim], but he couldn't get it in. So he used his finger, and then he tried again and put his penis inside of [the victim] then." Id. Despite the separate and distinct penetrations, this Court reasoned, "We are unable to conclude that the intervening seconds between the penetrations provided a sufficient lapse of time so as to permit the development of 'a newly formed intent' as the digital penetration only served to facilitate the penile penetration." Id. (quoting Phillips, 924 S.W.2d at 665).

In State v. Kendrick, 38 S.W.3d 566, 569 (Tenn. 2001), a defendant forced fellatio "then, after driving for another five to ten minutes, he stopped the car again and forced [the victim] to engage in vaginal intercourse." The supreme court stated that "fellatio and vaginal intercourse . . . were separate and distinct offenses" under the facts in Kendrick and not "only one continuous offense . . . simply because the offenses were committed close in time and place." Id.

In regard to case number 00-10546, the victim testified that the defendant ordered, "Get on your knees," before he forced sexual penetration of her mouth while pointing a gun to her head. The victim testified, "once he was erect he told me to lay on the floor," he put a condom on, began to rub lubrication "all over my vagina," and then "he placed the gun beside my head and he took care of business by raping me." This Court has carefully reviewed the State's argument that, similar to the facts in Arnett, the fellatio only served to facilitate the vaginal penetration and was thus one act of rape for which election was not required. Applying the Phillips factors to these facts, we agree that

the "time elapsed" consideration may weigh in favor of the State. However, the remaining factors enumerated in Phillips do not support a conclusion that these acts of sexual penetration constitute one, continuous act of sexual conduct involving one formation of intent and absolving the necessity for election.

The first two factors in Phillips weigh in favor of the need for an election. First, the nature of oral and vaginal penetration is entirely distinguishable and evident without graphic discussion. Phillips next instructs that courts should consider the area of the victim's body invaded. As stated, both the vaginal and oral act of intercourse meet the statutory definition of "unlawful sexual penetration." Unlike the acts in Arnett, the acts of sexual penetration in the instant case involve separate and distinct areas of the victim's body.

The setting and surrounding facts to this case establish the intent of the accused, the fourth factor in Phillips. Pure sexual gratification is often the motive and goal of sexual offenders. In this case, the defendant raped various admitted prostitutes from which sexual gratification was presumably available in exchange for little money.[11] We are hard-pressed to conclude that pure sexual gratification was the intent of the accused by which he employed fellatio as a means to complete or facilitate the vaginal sex. Both the defendant and his codefendant wetted the clothing of various victims, tied them up, made them sing Christmas carols, and in some instances physically injured their victims. While their intents may well have been linked to sexual gratification, it is unquestionable that a desire to induce fear, intimidate, and humiliate their victims assisted their motivations. Considering the surrounding facts, we conclude that each act of forced penetration was likely intended and certainly capable of producing its own "fear, humiliation, pain, and damage to the victim." Phillips, 924 S.W.2d at 665. We further determine that each penetration was the product of a "purposeful act on the part of the perpetrator." Id.

The final factor enumerated in Phillips instructs courts to consider the likelihood or existence of cumulative punishment. Consideration of this issue is moot, as the State has not sought to convict the defendant for both acts of sexual penetration in case number 00-10546.

After reviewing the record and applicable authority, we conclude that the prosecutor's failure to elect the particular offense upon which the State sought conviction failed to preserve the defendant's rights under the Tennessee Constitution and constituted plain error. Tenn. R. Crim. P. 52(b). Accordingly, we vacate the conviction for aggravated rape in case number 00-10546 and remand it for a new trial.

Applying Phillips to case number 00-10554 is unnecessary, as we conclude that the prosecutor effectively made an election of offense for which conviction was sought. In case number 00-10554, F.C. testified that she was digitally penetrated before being forced to submit to intercourse. These two penetrations were of the same body part with little showing of the time elapsed between them. However, as the State asserts, only the penile penetration of F.C. was

---

[11] One of the women testified that her services cost approximately $30.00.

discussed in the closing argument of the prosecution: "[the defendant], here, forced [F.C.] to have vaginal sex." The State produced an admission by the defendant of penile penetration and evidenced the findings of F.C.'s rape examination showing the defendant's culpability. We conclude that, absent a formal election of offenses, the State's direction of proof at trial and obvious intent for which conviction is sought *coupled* with designation of the offense in closing argument constituted an election of offenses. This Court has previously held that a prosecutor's closing argument may effectively serve as an election of offenses. See State v. William Dearry, No. 03C01-9612-CC-00462, 1998 WL 47946, at *13 (Tenn. Crim. App., at Knoxville, Feb. 6, 1998), perm. app. denied (Tenn. Jan. 19, 1999). In consequence, we find this issue without merit.

### III. Conclusion

For the reasons set forth in this opinion, we reverse one of the defendant's convictions for aggravated rape and remand it for a new trial, affirm the remaining convictions and sentences, but reverse the judgments as to consecutive sentencing, and remand the entire case for a new sentencing hearing to reconsider whether consecutive sentencing is appropriate.

_____
J.C. McLIN, JUDGE

### Appendix

| Case No. | Charge | Victim | Verdict | Sentence |
|---|---|---|---|---|
| 00-10541 | Aggravated Robbery | C.G. | Guilty | 8 years at 30%, concurrent with 00-10544; consecutive to all other sentences |
| 00-10542[12] | *Count 1 - Aggravated Rape* | C.G. | Not Guilty | |
| | *Count 2 - Aggravated Rape* | | Not Guilty | |

---

[12] The trial court erroneously entered a judgment in this case number. Subsequently, this error was discovered by the trial court, and the conviction and sentence were vacated.

| | | | | |
|---|---|---|---|---|
| 00-10543 | Aggravated Robbery | A.C. | Guilty | 8 years at 30%, concurrent with 00-10551; consecutive to all other sentences |
| 00-10544 | Aggravated Robbery | R.L. | Guilty | 8 years at 30%, concurrent with 00-10541; consecutive to all other sentences |
| 00-10545 | *Count 1 -* Aggravated Rape | R.L. | Not Guilty | |
| | *Count 2 -* Aggravated Rape | | Not Guilty | |
| 00-10546[13] | *Count 1 -* Aggravated Rape | H.W. | Guilty | 20 years at 100%, consecutive to all other sentences |
| | *Count 2 -* Aggravated Rape | | | |
| 00-10547 | Aggravated Robbery | H.W. | Guilty | 8 years at 30%, concurrent with 00-10553, 00-10556; consecutive to all other sentences |
| 00-10548 | Aggravated Rape | J.C. | Not Guilty | |
| 00-10550 | *Count 1 -* Aggravated Rape | A.C. | Guilty | 20 years at 100%; consecutive to all other sentences |
| | *Count 2 -* Aggravated Rape | | | |
| 00-10551 | Aggravated Robbery | R.B. | Guilty | 8 years at 30%; concurrent with 00-10543, consecutive to all other sentences |

---

[13] The convictions in case numbers 00-10546, 00-10554, and 00-10555 were merged for sentencing.

| | | | | |
|---|---|---|---|---|
| 00-10552 | *Count 1 -* Aggravated Rape | M.B. | Not Guilty | |
| | *Count 2 -* Aggravated Rape | | Guilty | 20 years at 100%; consecutive to all other sentences |
| 00-10553 | Aggravated Robbery | M.B. | Guilty | 8 years at 30%, concurrent with 00-10547, 00-10556; consecutive to all other sentences |
| 00-10554 | *Count 1 -* Aggravated Rape | F.C. | Guilty | 20 years at 100%; consecutive to all other sentences |
| | *Count 2 -* Aggravated Rape | | Guilty | |
| 00-10555 | *Count 1 -* Aggravated Rape | R.B. | Guilty of Facilitation of Agg. Rape | |
| | *Count 2 -* Aggravated Rape | | Guilty | 20 years at 100%; consecutive to all other sentences |
| 00-10556 | Aggravated Robbery | F.C. | Guilty | 8 years at 30%; concurrent with 00-10547, 00-10553; consecutive to all other sentences |